## Adams, Judge, et al. v. Slavin, et al.

(Decided June 15, 1928.)

### Appeal from Fayette Circuit Court.

1. Constitutional Law.—Justices of the peace presiding in final trials of misdemeanor cases have the right to tax their costs against defendants on conviction, in the absence of an objection on the part of defendants asserting violation of rights under Constitution U. S. Amend. 14.

2. Jury.—The right to be tried by a jury of 12 men may be waived in a misdemeanor case.

3. Criminal Law.—Right to be present in court during the trial of a misdemeanor case may be waived.

4. Criminal Law.—The right to meet witnesses face to face may be waived by defendant in a criminal prosecution.

5. Judges.—Right to be tried by judge free from bias and prejudice may be waived by failure to seasonably object.

6. Judges.—Act Gen. Assem. 1928, known as Senate Bill No. 153, relating to the compensation of county judges presiding in criminal cases and providing for a salary in lieu of fees previously received, in so far as applicable to county judges in office at time of its enactment, held plainly violative of Constitution, sec. 161.

7.  Action.—In suit under Declaratory Judgment Act, court will not make a declaration of rights affecting parties not before it.

GEO W. VAUGHN for appellants.

J. KEENE DANGERFIELD, CHESTER D. ADAMS and JAMES PARK for appellees.

T. J. SPARKS, amicus curiae.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This is a suit under the Declaratory Judgment Act (Acts 1922, c. 83) to have determined four questions. They are: (1) Is the act of the General Assembly of 1928, known as Senate Bill No. 153, and entitled: "An act repealing section 1731, Kentucky Statutes, Carroll's 1922 Edition, in so far as same applies to county judges and enacting in lieu thereof an act fixing and regulating the fees of county judges in civil cases and disposing of costs in criminal cases and the fines and forfeitures in such courts and providing the method of fixing the compensation of said county judges in criminal causes," constitutional in so far as it authorizes and directs the fiscal courts to fix a reasonable compensation for the county judges now in office during the remainder of their present term of office for their services in presiding in the final trials of misdemeanor cases? (2) If the act be constitutional, does it apply to cases coming under section 331g of the Kentucky Statutes? (3) If the act be unconstitutional, do county judges and justices of the peace have the right to preside at final trials in misdemeanor cases and to tax their costs against such defendants on conviction as they formerly did in the absence of an objection on the part of the defendants to being so tried by such judges? and (4) If the act be constitutional, do justices of the peace still have the right to preside in final trials of misdemeanor cases and to tax their costs against such defendants on conviction as they formerly did, in the absence of an objection on the part of the defendants to being so tried by such justice of the peace?

The act of the General Assembly here involved was passed in an effort to solve, at least in some measure, the problems raised by the cases of Tumey v. Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243, and

Wagers v. Sizemore, 222 Ky. 306, 300 S. W. 918. The first subsection of section 1 of the act, in effect, takes from the county judge that portion of the fines and forfeitures he received under the law as it stood prior to the passage of this act and gives it to the treasury of the county of such county judge. Subsection 2 of section 1 of the act comprises, first, a literal copy of section 1731 of the Kentucky Statutes as it appears in Carroll's 1922 Edition, omitting those items of costs therein appearing which pertain to costs in prosecutions of misdemeanors before a county judge. At the end of the last item of permissible costs appearing in this part of section 1 there is added the following:

"The fees hereinabove provided shall apply to civil cases only and to county judges only. For presiding at a final trial in a misdemeanor case the county judge shall tax as costs the sum of $4.50 in the event of conviction and when collected by him shall be monthly paid to the county treasurer of his county, respectively, accompanied by an itemized statement, duly verified by him, showing the persons from whom such costs were received and same shall go into the general fund of the county."

The remaining portion of this subsection of section 1 of the act is, in the act, denominated "section 1731a" and reads:

"The fiscal courts of the several counties of the state shall fix a reasonable compensation for the county judges for their services in criminal misdemeanor cases, same to be in addition to any compensation now received from said counties respectively, payable as other salaries are paid and to remain as and when fixed for the remainder of the present term and thereafter to be fixed for the ensuing term at the last regular term of the fiscal court preceding the regular election for county officers, beginning in the fall of 1929 and every four years thereafter; provided, however, that said compensation in misdemeanor cases shall not exceed one-half of the regular salary now paid said county judges by the several counties of the commonwealth, respectively, and in no event shall the compensation of any county judge from all sources exceed five thousand dollars per annum."

Section 2 of the act provides:

"If any provision or section of this act shall be held to be invalid, such fact shall not affect or render invalid any other provision, part or section of this act, it being the intention of the General Assembly in enacting this act to enact each provision, part and section separately."

Section 3 declares an emergency to exist and that the act shall be in effect from and after its passage and approval by the Governor. Section 4 provides that all laws or parts of laws in conflict with the act are repealed.

We shall first dispose of the question whether justices of the peace have the right to preside in final trials of misdemeanor cases and to tax their costs against such defendants on conviction as they formerly did, in the absence of an objection on the part of the defendants to being so tried by such justices. This question is to be determined quite independently of the constitutionality of the act of 1928 here involved, but its solution will aid us in solving the question of that constitutionality so far as this case presents it. To ascertain whether the justices of the peace have the right to preside on final trials of misdemeanors and to tax costs as they formerly did requires an analysis of the Tumey and Wagers cases, supra.

In the Tumey case, it was held that a defendant, who seasonably objected to being tried by the mayor of a city for a misdemeanor in which, on conviction, a material part of the fine and costs went to the mayor as a fee for his services in so presiding, he getting no fee in the event of an acquittal, could not be tried by such mayor without being deprived of the protection of the due process clause of the Fourteenth Amendment. The opinion and result reached in that case necessarily rest upon the fundamental propositions that the mayor's court as such had jurisdiction to try the accused, and that the statute providing that the mayor was to receive certain costs and part of the fine in the event of conviction was not, in itself, invalid. Indeed, it was the very right of the mayor to receive the costs and fine under the circumstances which disqualified him from acting as judge. Had he had no right to receive such costs and fines because the act which purported to vest him with such right was invalid, then he would not have been an interested judge and so

would not have been disqualified. Wagers v. Sizemore, supra, necessarily rests on the same propositions. In this Sizemore case, the attack upon the judgment of conviction was collateral. If the cost statute was invalid, then Sizemore, the justice of the peace, had the undoubted right to try Wagers because he was not a disqualified judge, being entitled to no costs or part of the fine in the event of conviction. The judgment in the misdemeanor case would then have not been void. If this had been true, the execution on the judgment in the misdemeanor case would not have been enjoined as it was in that case. It was not pretended in either case that the law vesting in the court of justices of the peace jurisdiction to try such misdemeanor cases was invalid. Indeed, the Tumey case towards its close expressly recognizes the right of the Legislature to vest such jurisdiction in such courts. But it did give the defendant the right to object to being tried by a judge who was financially interested in convicting him. Thus we see that the sole ground on which both the Tumey and Wagers cases rest is that a defendant has the right to object to being tried by a judge who is financially interested in his being convicted, and that to try him after such objection is to deprive him of the protection of the due process clause of the Fourteenth Amendment. Is such a defendant also deprived of the protection of that clause if he does not "seasonably" (to use the language of the Tumey case) object to being tried by such a judge? It is settled that constitutional rights, at least in the trial of misdemeanor cases, and that is all we have here, may be waived by defendants. Thus the right to be tried by a jury of 12 men may be waived in a misdemeanor case. Phipps v. Commonwealth, 205 Ky. 832, 266 S. W. 651. A right to be present in court during the trial of a misdemeanor case may be waived. Bates v. Commonwealth, 190 Ky. 338, 227 S. W. 472; Moore v. Commonwealth, 203 Ky. 350, 262 S. W. 298. The right to meet "the witnesses against him face to face" may be waived by a defendant, in a criminal prosecution. Bonar v. Commonwealth, 180 Ky. 338, 202 S. W. 676.

Even the right to be tried by a judge free from bias and prejudice may be waived by a failure to "seasonably object." Hargis v. Commonwealth, 135 Ky. 578, 123 S. W. 239. There is no just distinction between the last state of case and a case where one fails to seasonably object to being tried by a judge who is disqualified be-

cause of financial interest in the prosecution. Indeed, the motive for a corrupt decision would often be more powerful in the first state of case than the latter, for the small financial return which accrues in the great majority of convictions in these misdemeanor cases would not have nearly the impelling force to a corrupt decision that a strong and personal bias or prejudice would have. We are therefore of the opinion that where a defendant on a final trial for a misdemeanor fails to seasonably object to being tried by a justice of the peace, the latter may try him, and in the event of a conviction tax the costs against him, as has been the custom for so many years in this commonwealth. What we have said being true, it follows that had the act of 1928 never been passed, county judges in the absence of seasonable objections would have had the same right to try defendants in misdemeanor cases and tax costs against them in the event of conviction as justices of the peace have. Cf. Craig, Auditor, v. Shelton, 201 Ky. 790, 258 S. W. 694.

The act of 1928, however, while not divesting those courts over which the county judge presides of such jurisdiction, civil or criminal, which they had prior to its passage, does take away from the county judges now in office, as well as those to be elected hereafter, all right to tax and collect any costs against any defendant in a final trial of a misdemeanor case and the right to receive any part of the fine in the event of a conviction whether such defendant objects to being tried by such county judges or not. In lieu thereof, fiscal courts are directed to pay such county judges a salary for their services in presiding in such trials. This salary, according to the terms of the act, cannot, in the case of the present county judges, exceed one-half the salary such judges are now receiving for their other services to the county. Section 161 of the Constitution provides:

> "The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed."

The act of 1928, in so far as it applies to the present county judges, plainly violates this section of the Constitution. A long line of cases establishes the proposition

that section 161 of our Constitution forbids the altering or changing of the scale of fees or commissions for specified services during the term of the officer to which they apply and after he has taken office. The case of Owen County Board of Education v. Kemper, 197 Ky. 407, 247 S. W. 25, is illustrative. There it was held that the compensation of a sheriff receiving less than the constitutional limit could not be changed during his term of office by decreasing his commission for collecting the school tax from 4 per cent. of such sums in excess of $5,000 to 1 per cent. of such excess. A partial list of like cases is set out in Carl v. Thiel, 211 Ky. 328, 277 S. W. 485. The act of 1928 does not take any jurisdiction away from the courts presided over by these county judges. It simply takes away from the present county judges all right to receive any part of the fine or any costs in the trial of these misdemeanor cases. They had the right to such fines and costs in the event of conviction where the defendant did not seasonably object to being tried by them. For such fines and costs is substituted a salary which in some cases may far overrun what the county judge has heretofore been receiving by way of such fines and cost, but which will in most cases fall far short of such amount. But whether it overruns or falls short, the change is equally condemned and forbidden by section 161 of the Constitution. The act, then, in so far as it applies to the county judges in office at the time it was approved by the Governor, is unconstitutional.

We decline to pass on its constitutionality as to county judges not in office at the time it was approved by the Governor, for there is no such judge a party to this record. Under the Declaratory Judgment Act, we have steadily declined to declare rights which affect those who have or claim any interest that would be affected by such declaration unless such persons are parties to the litigation. Coke v. Shanks, 209 Ky. 723, 273 S. W. 552; Ezzell v. Exall, 207 Ky. 615, 269 S. W. 752. As to whether cases falling under section 311g of the Statutes come within the purview of the act of 1928, we also decline to pass, since that question cannot affect the present county judges, and no one otherwise affected by that question is a party to this case. As the judgment of the lower court is not in accord with the views herein expressed, it is reversed on the original and cross-appeal with instructions to enter a judgment declaring that, in the absence of a seasonable objection, justices of the peace

and county judges in office at the time the act of 1928, known as Senate Bill No. 153, was approved by the Governor have the right to preside in final trials of misdemeanor cases and, in the event of a conviction, to tax costs against the defendant and to receive a part of the fine as such justices of the peace and county judges were doing prior to the decision of Tumey v. Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243; that said act of 1928, in so far as it is applicable to county judges in office at the time said act was approved by the Governor, is unconstitutional; and that, in so far as any other declaration of rights is asked, the case is dismissed without prejudice.

Whole court sitting.